IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MISTIE L. GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV848 |
| | ) | |
| | ) | |
| ONEMAIN FINANCIAL GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Mistie L. Greene, initiated this action against Defendant, OneMain Financial Group, LLC, ("OneMain Financial"), alleging employment discrimination pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.,* and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 and § 12117. (ECF No. 1.) Before the Court are Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss the Complaint for Lack of Subject Matter Jurisdiction, (ECF No. 6), and Defendant's Motion to Strike Plaintiff's Amended Complaint, (ECF No. 16). For the reasons outlined herein, Defendant's motion to compel arbitration will be granted and Defendant's motion to strike will be denied as moot.

**I. BACKGROUND**

Plaintiff is a former employee of Defendant and its predecessor corporations, (ECF No. 1 ¶¶ 9–10), and was employed with these companies for more than 26 years, (*id.* ¶¶ 19,

44).  According to her Complaint, Plaintiff was originally hired in April, 1990 as a Customer Service Representative at Commercial Credit.  (*Id.* ¶ 19.)  The company's name was later changed to CitiFinancial, then to OneMain Financial.  (*Id.*)  In November, 2015, Defendant OneMain Financial was acquired by Springleaf Holdings, Inc. ("Springleaf"), at which time Springleaf changed its name to OneMain Holdings, Inc.  (ECF No. 6-1 ¶¶ 2–3.)  Plaintiff continued her employment at OneMain Financial after its acquisition by Springleaf until she was terminated on or about March 30, 2017.  (*Id.* ¶ 44.)

Following her termination, Plaintiff initiated this action, alleging, among other things, that OneMain Financial discriminated against her based on her age and disability and further that she was wrongfully terminated.  (*Id.* ¶¶ 66–67, 73, 77.)  Approximately two months after the Complaint was filed, Defendant moved to compel arbitration and to stay or dismiss these proceedings.  (ECF No. 6.)  In its supporting memorandum, Defendant contends that as a condition of employment, Plaintiff electronically signed a certificate agreeing to Defendant's Employment Dispute Resolution Program ("EDRP") which requires the Defendant and its employees to submit covered disputes to binding arbitration.  (ECF No. 8 at 2–3.)  Plaintiff, however, denies that the parties entered into any such agreement, or in the alternative, if there was an agreement, it is not enforceable.  (*See* ECF No. 11 at 2, 7–11.)

## II. FEDERAL ARBITRATION ACT

"[A] court may order arbitration only when it 'is satisfied that the parties agreed to arbitrate.'"  *Lorenzo v. Prime Commc'ns, L.P.*, 806 F.3d 777, 781 (4th Cir. 2015) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)).  Under the Federal Arbitration Act (the "Act"), 9 U.S.C. §§ 1–16, "[w]hen a valid agreement to arbitrate exists between the parties

2

and covers the matter in dispute, the [Act] commands the federal courts to stay any ongoing judicial proceedings and to compel arbitration." *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 552 (4th Cir. 2001) (first alteration in original) (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)). "Motions to compel arbitration under an arbitration clause should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Zandford v. Prudential-Bache Secs., Inc.*, 112 F.3d 723, 727 (4th Cir. 1997) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989)).

To determine whether the parties have agreed to arbitrate, this Court must apply state law principles governing contract formation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001). Under North Carolina law[1], "a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms." *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 748 S.E.2d 171, 176 (N.C. Ct. App. 2013); *see also Lorenzo*, 806 F.3d at 781 ("North Carolina contract law . . . requires that 'the parties assent to the same thing in the same sense, and their minds meet.'" (quoting *Normile v. Miller*, 326 S.E.2d 11, 15 (N.C. 1985))). Consistent with federal policy, North Carolina likewise has a strong public policy favoring arbitration, such that "any doubt concerning the existence of [an arbitration] agreement must also be resolved in favor of arbitration.*" Johnston Cty. v. R.N. Rouse & Co.*, 414 S.E.2d 30, 32 (N.C. 1992).

---

[1] There is no dispute that North Carolina law applies here. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) ("A federal court sitting in diversity is required to apply the substantive law of the forum state.").

The party seeking to compel arbitration has the burden to prove that a valid arbitration agreement exists. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002); *Slaughter v. Swicegood*, 591 S.E.2d 577, 580 (N.C. Ct. App. 2004). Once the court is satisfied that a proponent of such agreement offers credible, admissible evidence to support a finding of an agreement to arbitrate, the party opposing arbitration must unequivocally deny that such agreement exists and produce evidence to substantiate the denial. *See Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015).

### III. DISCUSSION

In addition to its Memorandum in Support of Defendant's Motion to Compel Arbitration, OneMain Financial filed Declarations of employees of OneMain Financial Group and its parent company with attached exhibits. These declarations and exhibits demonstrate the following:

- In November, 2015 Springleaf purchased OneMain Financial from Citigroup and in December, 2015 OneMain Financial employees were transitioned to policies consistent with its new ownership. (*See* "Fleck Declaration," ECF No. 6-1 ¶ 2.)

- During the December, 2015 transition, all OneMain Financial employees, including Plaintiff, were required to electronically review and acknowledge various company policies. "To do so they were required to log into the Company intranet to take Human Resource Policy training." OneMain Financial employees were provided with a unique user name and required to enter a private password known only to them to access documents. "Once . . . logged on, the employee was first asked to review and consent to the use of electronic signatures." Once that form was signed the employee was presented with a screenshot that the next step was to review the Code of Conduct, the Employee Dispute Resolution Program and other policies. The employee could not leave that section unless they clicked on and opened each PDF in that section. One of the PDFs was entitled "Springleaf Finance Employment Dispute Resolution Program (Effective June 1, 1999 as Amended and Restated Effective October 1, 2012)." "After [that]

4

employee opened each policy presented in that section of the training the employee was presented with a certificate to electronically sign." The certificate stated "[b]y checking th[e] box and clicking 'I agree' . . . I understand that[ ] I have reviewed, understand, and will comply with all aspects of the . . . Employee Dispute Resolution Program." (*See* "Alexander Declaration," ECF No. 6-2 at 1–3, 8, 14.)

- Attached as Exhibits 1 and 5 to the Alexander Declaration are screenshots of the training program from its Human Resources database that shows each step of the training, including a screenshot illustrating that Plaintiff completed the required training on December 17, 2015. "The system was programmed to only generate user completion of the OneMain Human Resources Policy Certification after the employee actually completed the training program and electronically signed off on all of the required documents." (*Id.* at 2–3, 4–8, 30.)

- Attached as Exhibit 3 to the Alexander Declaration is a copy of the EDRP offered by OneMain Financial during the training which reads, in pertinent part: "Employment or continued employment after the Effective Date of this Program constitutes consent by both the Employee and the Company to be bound by this Program . . . . The Program is intended to create an exclusive procedural mechanism for the final resolution of [legal disputes between the Company and its present and former employee]. . . . The Program is a contract . . . . 'Dispute' means any legal or equitable claim, demand or controversy, in tort, in contract, under statute, or alleging violation of any legal obligation[ ] . . . between the Company and an Employee." (*Id.* at 14.)

- In addition, OneMain Financial produced five Employee Handbook Receipt Forms signed in wet ink by Plaintiff that demonstrated that over the course of her employment with OneMain Financial and its predecessors, Plaintiff had signed at least five arbitration agreements each stating that she understands that the handbook contained a provision that "requires [her] to submit employment-related disputes to binding arbitration." (*See* "Clotworthy Declaration," ECF No. 14-1 at 2, 5–9.)

Through these affidavits and exhibits Defendant has proffered substantial credible admissible evidence demonstrating that: (a) on December 17, 2015 Plaintiff electronically signed a certificate that read, "I have reviewed, understand, and will comply with all aspects of the . . . Employee Dispute Resolution Program"; (b) the EDRP requires the Defendant and

its employees to submit covered disputes to binding arbitration; and (c) covered disputes under the EDRP include "any legal or equitable claim, demand or controversy, in tort, in contract, under statute, or alleging violation of any legal obligation[ ] . . . between the Company and an Employee." (ECF No. 6-2 at 8, 14, 16, 30.)

In response, Plaintiff appears to offer two major arguments. The first is that no agreement to arbitrate exists between the parties because "there was no assent, no mutuality of agreement and no meeting of the minds." (ECF No. 11 at 7.) The second is that if this Court finds that an agreement does exist between the parties, it is not enforceable due to lack of consideration. (*Id.* at 8–9.) In addition to her Memorandum in Opposition to Defendant's Motion, Plaintiff offers as evidence in support of her arguments her own affidavit. (ECF Nos. 10-1, 11.) Notably, Plaintiff fails in both her affidavit and memorandum to specifically address or contest the evidence presented by Defendant. *See id.* Specifically, she does not deny that on December 17, 2015 she electronically signed a certificate which stated that she reviewed, understood, and agreed to comply with Defendant's EDRP. Plaintiff does state, in her affidavit, however, that Defendant "never made [her] aware of nor do[es she] have any knowledge of" the EDRP, (ECF No. 10-1 ¶¶ 6–7), and that she "ha[s] never signed for nor received a copy of any alleged . . . Employment Dispute Resolution Program," (*id.* ¶ 8). These statements fall short of an unequivocal denial that she signed the certificate agreeing to comply with the EDRP. Nor are Plaintiff's statements in her affidavit credible considering the evidence produced by Defendant that she has signed five other such arbitration agreements with OneMain Financial and its predecessors during the course of her employment. (ECF No. 14-1 ¶ 6.)

Rather than present evidence to counter the evidence presented by Defendant, Plaintiff argues that there was no mutual assent for a number of reasons including that: (i) Defendant did not give her a hard copy of the agreement, (ECF No. 11 at 5); (ii) Defendant "never spoke to the Plaintiff" or had a meeting regarding the EDRP, (*id.* at 6); (iii) there were "significant barriers to retrieve, return to, [or] view" the EDRP, (*id.*); and (iv) Plaintiff could not barter or negotiate the EDRP, (*id.* at 8). The Court is unpersuaded by these arguments, none of which are consistent with current law, and none of which demonstrate that Plaintiff did not manifest her assent to the EDRP. First, it is well settled under North Carolina law that a party need not sign a hard copy of an agreement for it to be enforceable. *See Powell v. City of Newton*, 703 S.E.2d 723, 727 (N.C. 2010) ("Electronic signatures are given the same legal recognition as traditional signatures."); *see also Jackson v. Univ. of Phoenix, Inc.*, No. 5:13–CV–736–BO, 2014 WL 672852, at *1, *3 (E.D.N.C. Feb. 20, 2014) (enforcing an electronically-signed arbitration agreement). Second, the law does not require that an employer speak with an employee or have a meeting to discuss the arbitration agreement for such to be enforceable. *See Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879, 880 (N.C. Ct. App. 1999) (enforcing an arbitration agreement after an employer "mailed to covered employees a copy of the [agreement] with a memorandum [explaining the agreement]"). Third, to the extent that there were "significant barriers to retrieve, return to, [or] view" the EDRP, (ECF No. 11 at 6), Plaintiff has not introduced evidence demonstrating her inability to read the EDRP when she agreed to its

terms.² Fourth, the alleged inability of Plaintiff to negotiate the EDRP does not invalidate the contract. *See Wilkerson ex rel. Wilkerson v. Nelson*, 395 F. Supp. 2d 281, 289 (M.D.N.C. 2005) (holding, under North Carolina law, that a nonnegotiable, take-it-or-leave-it arbitration agreement, or a contract of adhesion, is not automatically invalidated, but instead "merely subject . . . to greater scrutiny"); *see also Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 88 (4th Cir. 2005) ("[S]ince the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable.").

Moreover, North Carolina recognizes the principle of implied consent. "[U]nder North Carolina law, continued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent." *Hightower*, 272 F.3d at 243 (internal quotation marks omitted); *see also Lorenzo*, 806 F.3d at 781–782 ("To the extent that the district court failed to recognize [the] principle [of implied consent], it erred."). Here, Defendant's evidence demonstrates that Plaintiff had notice of Defendant's EDRP at least by December 17, 2015 when she completed the ethics training.³ (ECF No. 6-2 at 30.) Following receipt of the notice Plaintiff continued to work for OneMain Financial until her termination on March 30, 2017. (*See* ECF No. 1 ¶ 44.) Even assuming Plaintiff elected not to read or inadvertently overlooked the EDRP during the training, North Carolina law provides that

---

² Defendant has introduced evidence that shows that Plaintiff was able to view, download, and print the EDRP when she electronically signed the EDRP. (ECF No. 6-2 at 2, 10–11.) Plaintiff has not introduced any evidence that contradicts that assertion.

³ Plaintiff admits that she completed OneMain Financial's ethics training. (ECF No. 10-1 ¶ 9 ("I do remember . . . having ethics training.").)

"one who signs a paper writing is under a duty to ascertain its contents, . . . and in the absence of a showing that he was willfully misled[,] . . . he is held to have signed with full knowledge and assent as to what is therein contained." *GECMC 2006-C1 Carrington Oaks, LLC v. Weiss*, 757 S.E.2d 677, 682 (N.C. Ct. App. 2014) (internal quotation marks and citations omitted).

Plaintiff next argues that if this Court finds that an agreement to arbitrate exists, the EDRP is not binding because Defendant did not provide adequate consideration. (ECF No. 11 at 8–9.) That argument simply has no merit and is contradicted by the cases that Plaintiff cites,[4] specifically *Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998) and *Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879 (N.C. Ct. App. 1999), which state that a mutual promise between an employer and employee to be bound by arbitration is sufficient consideration to form a contract. *Johnson*, 148 F.3d at 378; *Howard*, 516 S.E.2d at 882.

Finally, to the extent that Plaintiff argues that she cannot vindicate her rights in arbitration or speculates about the practical difficulty of finding a fair and unbiased arbitrator, she has failed to carry her burden on these issues. The party seeking to avoid arbitration bears the burden of establishing that she cannot effectively vindicate her rights under the terms of the arbitration agreement. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). Here, Plaintiff makes only conclusory, unsubstantiated, statements in her brief concerning the

---

[4] Plaintiff also cites to *Hejl v. Hood, Hargett & Assocs.*, 674 S.E.2d 425 (N.C. Ct. App. 2009) which dealt with a non-competition agreement. (ECF No. 11 at 8.) *See Hejl*, 674 S.E.2d at 428. Unlike "[c]ovenants not to compete [which] are disfavored in North Carolina," *RLM Commc'ns, Inc. v. Tuschen*, 831 F.3d 190, 196 (4th Cir. 2016), this case is evaluating an arbitration agreement, which is favored under North Carolina law, *see R.N. Rouse & Co.*, 414 S.E.2d at 32 ("North Carolina has a strong public policy favoring the settlement of disputes by arbitration.").

ease with which large law firms secure arbitrators who will find in their favor. (ECF No. 11 at 10.) Such speculation is not sufficient to satisfy Plaintiff's burden.

IV. **CONCLUSION**

The Court concludes that Defendant has produced substantial credible evidence that a valid agreement to arbitrate exists between the parties and covers the matter in dispute, and Plaintiff has failed to produce credible evidence otherwise. This Court is, therefore, required to stay or dismiss this case and compel arbitration. *See* 9 U.S.C. §§ 3, 4; *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Where as in this case, it appears that all of Plaintiff's claims would be encompassed by the arbitration agreement, dismissal is an appropriate remedy. *See Choice Hotels Int'l, Inc.*, 252 F.3d at 709–710. Thus, the Court will dismiss Plaintiff's claims.

For the reasons outlined herein, the Court enters the following

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss the Complaint for Lack of Subject Matter Jurisdiction, (ECF No. 6), is GRANTED, and Plaintiff is compelled to arbitrate her claims against Defendant. This action is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion to Strike, (ECF No. 16), is DENIED as moot.

This, the 6th day of November, 2018.

/s/ Loretta C. Biggs
United State District Judge